Withers, J.
delivered the opinion of the Court.
By the 19th sec. of the Act regulating the duties of the v Ordinary, passed in 1839, it is provided as follows: “It shall be the duty of the Ordinary in whose office an administration bond is lodged, upon a petition filed by any of the sureties to the same, who conceive themselves in danger of being injured by such suretyship, to summon the administrator before him, and to make such order or decree for the relief of the petitioner, as may not impair or aifect the rights of the parties interested in the estate.” The terms of a similar provision in the Act of 1789, are as follows: “If the securities for administrators conceive themselves in danger of being injured by such suretyship, they may petition the Court to whom they stand bound for relief, which Court shall summon the administrator to appear, and thereupon make such order or decree as shall be sufficient to give relief to the petitioner.”
It will be observed that words of caution are added in our existing law, which are not found in that of 1789, to wit: “as may not impair or affect the rights of the parties interested in the estate.”
Now the inquiry is, has the defendant shewn, first, that the devastavit for which the decree of the Ordinary has been rendered against him, was committed subsequent to the date of the second bond (that is, to the 18th Nov. 1843;) and if so, then, secondly, whether the last bond was a legal discharge of this defendant from all acts of mal-administration on the part of Huson, subsequent to the date mentioned. Unless the defendant can establish the affirmative of both branches of this inquiry, he must be held to his liability as surety.
As to the first question. What evidence is there to shew that the default of the administrator occurred since the date of the second bond ? He had been administrator for about seven years, when the last bond bears date. Had he not received the assets of the estate ? The report answers that question, tor it is said the decree in the case was for receipts by the administrator of assets before the new bond was executed. It is, then, perfectly plain that the liability for such funds attached on the instant that they were received.
How, then, did the execution of the last bond discharge the administrator and his former surety from this liability, which is the second branch of the inquiry ? For any thing that appears in the evidence, it would be just as reasonable to contend that the former surety was discharged, by the naked fact that another bond had been executed, without more, as to urge that view under present circumstances. What more has been done? This only, to wit: that the administrator placed ■ in the hands of his new surety certain notes which were made payable to him as administrator. Why, how *330 was this an accounting to the estate for the amount of such notes 1 The notes were the administrator’s; the money was the matter for which he and his sureties were accountable. It will clear up some confusion of ideas in such cases to observe that because the new surety may be liable, it does not therefore follow that the elder one is discharged.
2 Hill, 512.
In the case of Trimmier v. Trail, there is not any authority for the argument here — nor can that be pretended if the fact in that case, stated at page 487, 2d Bailey, be observed. It is this — “In this case it does not appear that the decree was founded on a liability which had attached previous to the discharge and it is affirmed that none had in fact attached. “The administrators inventoried and legally sold the whole estate, and before the credit had expired, and before they had received any part of the proceeds of the sale, or any other assets of the estate, this defendant was discharged, and Williams substituted as surety. Up to the time of the defendant’s discharge, then, the administrator had legally administered and no liability had attached to him.”
In that case also there had been an order of discharge by the Ordinary in favor of Trail, so pleaded and admitted. It is to be presumed that there was a regular and formal proceeding. The features of resemblance between that case and this are not perceived. See further the case of Waterman, Ordinary, v. Bigham and Hudson.
If every matter of form in the present case had been regular, it would seem to be a doctrine foreboding fearful consequences, to hold that the depositing of notes with a new surety was such accounting to the estate as to discharge the old surety for the money which they represented. Surely that is not a more satisfactory account rendered than if the administrator had kept the notes himself, and failed to produce the money, (having squandered it) when called for, which is the substantial fact. To put this matter in another light — suppose the administration of Huson had been revoked, and administration de bonis non commited to other hands : would the deposite of these notes in the hands of one of the sureties of the substituted administrator work a discharge, in the eye of the law and of common sense, of the old bond ?
But it is proper to say, what is indeed suggested in the report, that there has been nothing in the nature of a regular and proper proceeding in the case under consideration to have the effect of discharging these defendants. There has been no account — there has been no order of discharge— there has been no ascertainment of clear and intelligible relations between the old and new administrations. It would be as well without authority, as of most evil consequence, to say that the grave obligations of an administrator and his sureties should be discharged by such proceeding as has been *331 relied 'upon in this case. It is well/that every step in the process of substituting new security for an estate, should be t taken with a view to proper notoriety among those interested, with perfect deliberation, and with a suitable entry of record,' according to the requisition of the Act of 1839. The ordinary is required to keep a journal “in which he shall enter every judgment, sentence, decree, determination, denial, and every other act done or order made by him in his official capacity, so as to constitute a complete journal of the current proceedings of his office” This is not an idle or unmeaning provision.
As to the ground touching the right of the party defendant to a longer period to plead, we see nothing in that. If he were not ready for trial, a postponement was in this case, as in all others, subject to the prudent discretion of the Court. That he should plead after the notice given in this case, is usual and reasonable.
The motion is refused.
Richardson, J. — O’Neall, J. — Evans, J. — and Frost, J. — concurred. .

Motion refused.